[Alabama Great Southern R. R. Co. v. Prouty.]

# Alabama Great Southern R. R. Co. v. Prouty.

### Bill to Abate Nuisance and for Damages.

(Decided March 2, 1907.   43 So. Rep. 352.)

1. *Water; Surface Water; Obstruction; Nuisance; Injunction.*—The land owner's remedy at law being inadequate equity will grant relief to abate a nuisance consisting of the construction of a railroad embankment which impeded the flow of surface water and constitutes a permanent and continuous obstruction thereof causing such water to overflow the land.

2. *Same.*—A railroad company has no right to obstruct the natural flow of surface water by its embankments to the injury of the higher land-owner.

3. *Equity; Bill; Multifariousness; Demurrer.*—The objection that a bill is multifarious may properly be taken by demurrer.

4. *Same.*—A bill was filed against two railroad companies alleging distinctive grievances; against one company for permitting a certain culvert to be filled up from its own neglect; against the other for digging a ditch along the north side of its embankment; and against the latter company for building a bridge over a certain creek, etc., and thereby obstructing the natural flow. The bill was dismissed as against the first company by complainant and judgment for costs entered against her thereon. Held, as the companies were not joint tort feasors. the dismissal as to one did not discontinue the cause, but did relieve the bill of multifariousness.

5. *Estoppel; Equitable Estoppel; Grounds.*—The fact that the land owner stated to the company that she wanted something done with the water that was being retained by its embankment and that she wanted the water carried off either by cutting a ditch or by a culvert, did not estop her to abate the nuisance caused thereby or to recover damages from the manner in which the ditch was constructed and efforts made by the railroad company to carry off the water, the land owner having no right to direct the railroad company with respect to the construction of its ditch and the manner in which it should provide for the flow of surface water.

[Alabama Great Southern R. R. Co. v. Prouty.]

APPEAL from Etowah Chancery Court.
Heard before Hon. R. B. KELLY.

Bill by Fannie A. Pouty against the Alabama Great
Southern Railroad Company. From a decree in favor of
plaintiff, defendant appeals.

This was a bill in chancery to abate a nuisance and
to recover damages on account thereof. The pleadings
and amendments are sufficiently set out in the opinion,
and the facts upon which the opinion is rested sufficient-
ly appear therein

GOODHUE & BLACKWOOD, for appellant.—The bill is
multifarious.—*Alexander v. Alexander*, 85 Va. 353;
*Fielder v. Davis*, 17 Ala. 425; *Meacham v. Williams*, 9
Ala. 847. The bill does not make out a case to enjoin
a trespass.—*Voulla v. N. O. M. & T. R. R. Co.*, 55 Ala.
488; *Hammond v. Winchester*, 82 Ala. 470. Where a
nuisance results from several persons acting separately
they cannot be joined as defendants in an action for
damages.—14 Ency. of P. & P. 1108; *Stone v. Dicken-
son*, 81 Am. Dec. 727; *Lovejoy v. Murray*, 3 Wall. 1;
*Livingston v. Bishop*, 3 Am. Dec. 330; *Seither v. Phila-
delphia Traction Company*, 11 Am. St. Rep. 905. A re-
lease of one or more joint tort feasors executed in sat-
isfaction of a tort is a discharge of them all.—*McCoy v.
L. & N. R. R. Co.*, 40 South. 106; *Floyd v. Ritter*, 56
Ala. 356; 24 A. & E. Ency. of Law, 306; authorities su-
pra. The decree rendered as to the other tort feasor
furnishes a full and complete valuable consideration for
its release.—*County Court v. Hall*, 51 W. Va. 269; 6 A.
& E. Ency. of Law, 704 and 723; *Boggan v. Cant*, 30
Ala. 279; *Allen v. Prater*, Ib. 458; *Wyatt v. Evans*, 52
Ala. 285; *Northern Liberty Market Co. v. Kelly*, 113 U.
S. 199; *Honeyman v. Jarvis*, 79 Ala. 318. The plaintiff
was estopped by her own action to recover for any in-
jury.—21 A. & E. Ency. of Law, 723; *Clifton Iron Co.
v. Dye*, 87 Ala. 468; *Burkham v. Ohio R. R. Co.*, 122
Ind. 344; *Hulme v. Shreve*, 4 N. J. Eq. 116; *Carlisle v.
Cooper*, 21 N. J. Eq. 591; *Williams v. Earl of Jersey*, 1
Cr. & Ph. 91; *Leonard v. Spencer*, 10 N. Y. 338; *Lynch
v. McNally*, 73 N. Y. 347.

SAM WILL JOHN, for appellee.—The averments of the bill and the evidence show that the injury complained of was continuous, constantly recurring, and, therefore, irreparable.—*Ninninger v. Norwood*, 72 Ala. 281. The water was shown to be surface water and was entitled to flow naturally.—*Crabtree v. Baker*, 75 Ala. 93; *Farris & McCurdy v. Dudley*, 78 Ala. 126; *Hughes v. Anderson*, 68 Ala. 280; *S. A. & M. Ry. Co. v. Buford*, 106 Ala. 311; *Ninninger v. Norwood*, *supra*. There was no exception taken to the report of the register and it was received as true.—*Mahone v. Williams*, 39 Ala. 225. This court is concluded, therefore, by the findings of the register.—*Nunn v. Nunn*, 66 Ala. 35; *Bellinger v. Lehman, Durr Co.*, 103 Ala. 387. The bill is not multifarious.—*Truss v. Miller*, 116 Ala. 494; *Kennedy v. Kennedy*, 2 Ala. 571.

HARALSON, J.—The bill was filed by the complainant to abate a continuing nuisance created on her lands by the Alabama Great Southern Railroad Company, and incidentally thereto, to recover the damages inflicted upon her and her property by said nuisance.

By the averments of the bill, the complainant owned and occupied as a home, 'a fiveacre tract of land, in shape a parallelogram, at the foot of Lookout Mountain; that the northern end of the tract was much higher than the southern, and that there was a ridge, running north and south through the center of the land, so that it dipped towards the south and towards the east and west.

It was further averred, that the Rome & Decatur Railroad Company condemned a right of way across the southern end of complainant's said land, and built thereon a railroad on a high embankment and afterwards, the Southern Railroad Company became the owner of the railroad, and was operating it at the time of the injuries complained of by complainant. Two embankments were built on the right of way of the railroad across complaintant's land, the one first refered to, constructed by the Rome & Decatur road, which the Southern Railroad Company came to own and possess, and the other, by the Atlanta Railroad Company, which

road was afterwards leased to the defendant, the Alabama Great Southern Railroad Company.

The last embankment was built by the latter company parallel with, and up to or abutting the first, so that when completed, the two formed a solid embankment running east and west over the lands of complainant and other lands. On each embankment railroad tracks were laid. The first of these embankments, the one that the Southern Company came into control and possession of, was pierced by an opening or culvert for the passage of storm or rain water, which came down from the mountain side, along and through a natural depression in the surface of the earth, and is called the Patrick ditch or culvert. This culvert was at a point about 250 feet east of the east line of complainant's land. For years, as is alleged and shown, this culvert, or water way, was kept open and the storm water which fell on the mountain side, on the lands of other persons, flowed through the culvert to lower lands lying south of said railroad embankments, and then flowed into a natural drain, and thence into Black creek

It is alleged, that in constructing this last named embankment, by the Alabama Great Southern Railroad Company, there was left through or under it, over the Patrick ditch, a water way for the rain or storm waters to flow from above, into the Patrick ditch, and for several years all the waters which came down the mountain, passed through said opening by way of their accustomed and natural channels, into Black creek Averment is made, that some time in 1897, from neglect of those whose duty it was to keep it open, said culvert began to fill up, and in 1898 became entirely closed, so that no water could pass or flow through it, and it was thrown on to complainant's land, and deposited soil or earth to the injury of complainant, and overflowed and greatly damaged a fine sulphur spring on her land of known medicinal properties; that it carries away large quantities of her soil and collects and gathers up large quantities of water, soil, stones and trash, together with filfth from privies located over said ditch, above the land of complainant, all from the lands of others, depositing large quantities thereof in and

upon the southwestern part of complainant's land. etc.
It is averred, that to relieve this situation, the Alabama
Great Southern Railroad Company cut a ditch along
the northern side of its embankment and at the foot
thereof, and inside its right of way, across the lands of
complainant, and then backed the water up and emptied
it into Black creek above the railroad track.

The bill was demurred to on many grounds, some of
which will be noted, which demurred was overruled.

By an amendment of the bill,, of the 21st of March,
1902, it is averred: "That much of the greater part,
if not the whole of these injuries are due directly to the
cutting of said ditch along the north side of said double
embankment, by the defendant, the Alabama Great'
Southern Railroad Company, and complainant does not
seek to recover damages therefor of, or from the other
defendant, the Southern Railway Company in this case,
but avers that it is the duty of said Southern Railway
Company to reopen or restore the water way under its
track over said Patrick ditch, and place it in such condi-
tion, as that it will be of sufficient capacity to carry
through it, all the water that flowed through that open
ing, before said company allowed it to fill up."

On the same day, a consent decree between plaintiff
and defendant was entered, by which it was "decreed
that the Southern Railway Company is not, and shall
not be held liable for any damages heretofore inflicted
upon complainant or her property arising from any
of the matters and things complained of in complain-
ant's bill and amended bills of complainant; and it is
further agreed and decreed, that as to the other matters
complained of in said bill and amended bills, the com-
plainant, as against said Southern Railway Company,
is not entitled to recover, and that the defendant
Southern Railway Company, have and recover judg-
ment of complainant for all the lawful costs in this be-
half expended, to be taxed by the register of this court,
for which let execution issue."

It is also set up in the amended sixth section, as a dis-
tinct complaint against the Alabama Great Southern
Railroad Company, that in building a bridge across
Black creek for the track controlled by said railroad

company, it was done in such manner as to reduce the open way for water to flow down said creek, so that when the Alabama Great Southern Company cut said ditch, it did it in the manner described in said amended section 6, and in a manner to cause a bar in said creek, which caused its water to back onto compalinant's lands, overflow her springs and cause her great damage.

The injuries complained of are brought forward in a way to show that they are permanent, continuous and constantly recurring. In such case, they constitute a nuisance against which a court of equity will grant relief, although there may be a remedy at law, since it would obviously be inadequate.—*Ninninger v. Norwood,* 72 Ala. 277, 47 Am. Rep. 412.

The water flowing from the mountain side, above complainant's land, through the depression called the Patrick ditch, under the first embankment, erected by the Rome & Decatur road, was surface water, and should have been allowed to flow off naturally. The burden was on the lower land to thus receive it, and there was no right in the owner of the higher land, by artificial obstruction designed for its improvement to relieve it from its natural disadvantages, to increase the burdens of the lower estate.—*Crabtree v. Baker,* 75 Ala. 94, 51 Am. Rep. 424; *Hughes v. Anderson,* 68 Ala. 280, 44 Am. Rep. 147.

"A railroad company has no more right to obstruct the natural flow of water by an embankment or other artificial means, or by the collection of water into an artificial channel, forcing or conducting it to a discharge upon the lands of another, than it has, in the same way, to dispose of water from water courses; and it is as liable for resulting damages in the one case as in the other."—*S. A. & M. R. R. Co. v. Buford,* 106 Ala. 312, 17 South. 395.

The bill we doubt not, has equity, and the motion to dismiss for want of equity, was properly overruled.

The objection for multifariousness was properly taken by demurrer, for a bill may contain equity and yet be multifarious.—3 Mayfield's Dig. 290, §§ 2104, 2105. Multifariousness "is generally understood to indicate those cases where a party is brought in as a defendant

on a record, with a large portion of which, and in the case made by which, he has no connection whatever."— *Adams v. Jones*, 68 Ala. 117.

Again: "It is described generally, as the joinder of different and distinct and independent matters, thereby confounding them, or the uniting in one bill, of several matters, perfectly distinct and unconnected against one defendant; or the demand of several matters of a distinct and independent nature against several defendants in the same bill."—*Truss v. Miller*, 116 Ala. 505, 22 South. 863; *Alexander v. Alexander*, 85 Va. 363, 7 S. E. 335, 1 L. R. A. 125; *Mecham v. Williams*, 9 Ala. 847.

The complainant has three distinct grievances against the two railroad companies disconnected from each other: First, of the distinct and separate action of the Southern Company alone, in permitting its culvert, the Patrick ditch, to become filled up from its own neglect; second, of the separate and distinct action of the Alabama Great Southern Railroad Company, in digging a ditch on the north side of the embankment; and third, of the separate and distinct action of the latter road, in building its bridge over Black creek.

On these grounds the bill, according to the generally recognized doctrine, it may be, might be declared to be multifarious and liable to the demurrer interposed to it. It was, however, relieved of this objection, by amendment filed on the 21st of March, 1902, as has already been shown, and by the said decree of the same date, which was entered by complainant's consent. This decree was approved by the solicitors of the complainant and the Southern Company, and was the equivalent of a dismissal of the bill against the Southern Company. When this was done, the other defendant, the Alabama Great Southern Company, against whom alone the bill was retained, had no reason to complain of the bill as being multifarious. It is argued that this is not true, since the complainant dismissed her bill for a valuable consideration, and that a dismissal against one tortfeasor, was a dismissal as to the other. There is, however, no evidence of a dismissal by complainant for a valuable consideration, and the Southern Company was

not a tort-feasor in the acts committed by the other company, of which complaint is made.

One of the witnesses, Peter Youngman, testified, that complainant directed that the ditch, north of the upper embankment, cut by the Alabama Great Southern Company, should be cut, and said she wanted something done with the water; that she wanted the water carried off either by cutting the ditch or by the culvert through the Southern Railway. From this circumstance it is insisted, that complainant cannot now complain of any damage caused by the cutting of that ditch since she directed it to be cut. But this, it is submitted, is a strained and unwarranted construction of complainant's language touching the digging of the ditch. All she meant, and all her language imports she meant was, that she insisted as she had a right to do, that the defendant should do something to relieve her of the damage it was inflicting on her. She had no right to direct the defendant in the matter, for the defendant was not subject to her control.

We have considered all the questions which occur to us to be of importance to notice, and finding no error in the decree below it is affirmed.

Affirmed.

TYSON, C. J., and SIMPSON and DENSON, JJ., concur.