YAZOO & MISSISSIPPI VALLEY RAILROAD COMPANY *v.*
MATTHEW R. PAYNE.

[46 South., 405.]

EQUITY.  *Specific performance.  Remedy at law.  Province of the court.
Ditching farms.  Constructing farm crossings over railroad
tracks.*

A court of equity will not specifically enforce a contract obligating
a railroad company to perfectly drain a farm through which its
line extends and provide whatever farm crossings may be needed
by the owner; the remedy at law for the breach of the contract
being adequate and the superintendence of draining farms and
constructing farm crossings over railroad tracks not being
within the province of the court.

FROM the chancery court of Yazoo county.

HON. G. GARLAND LYELL, Chancellor.

Payne, the appellee and cross-appellant, was the complainant
in the court below; the railroad company, appellant and cross-
appellee, was defendant there.  From a decree overruling de-
fendant's general demurrer, and its certain special demurrers,
to the bill of complaint—one of the special demurrers was sus-
tained—the defendant appealed to the supreme court, and
complainant prosecuted a cross-appeal.

The opinion of the court states the case.

*Mayes & Longsteet* and *Chas. N. Burch,* for appellant.

The court below properly sustained the special demurrer to
those allegations in the bill seeking for a reformation of the
deed.  The law is well settled that if a bill allege that a term
or provision was erroneously omitted from the contract, refor-
mation and specific performance in regard to the same may be
decreed; but where a bill seeks to contradict or vary a written
contract by parol, it is demurrable if such variation be essen-
tial to the complainant's right to relief.  20 Encyc. Pl. & Pr.,

404. And since there was no appeal by complainant from the decree on this special demurrer, this court will not now consider complainant's demand for reformation.

Turning now to the court's action in overruling the railroad company's demurrer to that portion of the bill which called for a specific performance of the written agreement to make ditches and supply drainage, an examination of the authorities will show that such action was erroneous. The case falls squarely within the rule laid down by this court in *Bomer Bros.* v. *Canaday,* 79 Miss., 222, 30 South., 638, 55 L. R. A., 328, 89 Am. St. Rep., 593, holding that "where the enforcement of a decree of specific performance would unduly tax the attention and superintendence of the court; where it would necessitate the compelling of personal acts involving the exercise of special skill, taste or judgment; where the performance of the contract must stretch over a considerable time; where the contract is so complex in its nature that it would be difficult in any case to determine whether an alleged disobedience of the court's decree was in fact a disobedience; and where the interests of other suitors and the general administration of justice must suffer if the court were to give the necessary care and oversight to the enforcement of its decree; in all of these cases, by the general rule, a decree of specific performance will be refused."

It is apparent that the making and maintaining of ditches on farm lands is a matter analogous to the conducting of husbandry which constitutes one of the classes where, by the nature of the subject matter, the court would be unable properly to frame a decree. What is a good system of ditches as to one place might not be as to another. The obligation upon the railroad company, under the written contract, is a continuing one involving not only the obligation to dig ditches, but also the additional obligation of keeping them clear and in serviceable condition year after year. For this reason this court will not undertake to decree specific performance, but will leave the parties to their remedies at law.

In support of the above contention, we cite the following authorities, mentioning briefly the holding in each case:

In *Gore* v. *Biddeford,* 85 Me., 393, it was held that a land owner's contract with the city to extend or construct a sewer in his land could not be specifically enforced on allegation that the land is damaged and that plaintiff is prevented from using the same for building purposes.

In *Blanchard* v. *R. R. Co.,* 31 Mich., 43, the court refused specifically to enforce a stipulation, in a deed to a railroad company, that the railroad company would build a depot on the land conveyed, stop its trains at such depot, and receive and discharge passengers thereat.

In *Rutland Marble Co.* v. *Ripley,* 77 U. S., 339, specific performance of a contract was refused where the duties called for were continuous and involved the exercise of skilled personal labor and cultivated judgment, as to deliver marble of certain kinds and in blocks of such size and kind that the court was incapable of determining whether they were in accord with the contract or not. Just as in the case at bar, the court would be unable to determine whether these ditches were adequate or not. To the same effect are *Electric Lighting Co.* v. *Mobile Railway Co.,* 109 Ala., 190; *Wallensak* v. *Briggs,* 119 Ills., 453; and *Fallon* v. *R. R. Co.,* 1 Dillon, 121.

In *Henry Co.* v. *Drainage Co.,* 52 Ills., 454, the court refused specific performance where a county had conveyed swamp lands to a drainage company on condition that the drainage company should drain the lands as far as the same might be practicable.

In *Harley* v. *Sanitary District,* 54 Ills. App., 337, it was held that equity would not enforce specific performance of a contract for the construction of a canal by enjoining the owner from interfering with the contractor's performance of the work.

In *Mastin* v. *Halley,* 61 Mo., 196, it was held that equity would not enforce a building contract.

In *Railway Co.* v. *Railway Co.,* 37 Fed., 733, it was held

that equity would not enforce the performance of a contract to repair a railway for a period of many years.

In *Railroad Co.* v. *Speer,* 32 Ga., 550, a railroad corporation, in consideration of a grant of right of way through the premises of the complainant, contracted to place, besides their road, on said premises, a platform convenient for loading and unloading cars, and to take from that platform all produce to be shipped by the complainant, etc., it was held that a bill in equity would not lie in favor of the complainant against the company to enforce specific performance of that contract.

In *Danforth* v. *Railroad Co.,* 30 N. J. Eq., 12, it was held that specific performance would not be decreed of a contract requiring the direct superintendence of the court, nor where the duties to be performed are continuous.   See also, *Kidd* v. *McInnis,* 1 N. D., 381; *Re Appeal of Pittsburg R. R. Co.,* 99 Pa., 177.

*Thurston H. Allen,* for appellee.

It is true that, as a general rule, a court of equity will not enforce a contract for erection of a building, or for maintenance of drainage, for the reason that if there be a breach of the contract courts of law will give ample relief by way of damages. But such rule will not apply in the case at bar.   It is distinctly stated in 26 Am. & Eng. Encyc. of Law (2d ed.), that: "The tendency seems now to be to decree specific performance, even though the contract does not call for a succession of acts, where remedy at law is clearly inadequate, and great injustice would be done if the contract was not performed, particularly where the act to be done is purely of a ministerial nature, and does not require the exercise of personal choice, discretion or judgment.   This departure from the general rule is particularly noticeable in contracts with reference to the operation of railroads, etc.   This exception to the general doctrine has been said to be founded upon the rights of the public rather than those of the plaintiff, the theory being that when the inconvenience of

the court in acting is more than counter-balanced by the inconvenience of the public if they did not act, the interests of the public will prevail." And see also *Lawrence* v. *Saratoga, etc.,. R. R. Co.,* 36 Hun. (N. Y.), 474; *Hubbard* v. *Kansas, etc., R. R. Co.,* 63 Mo., 68; *Parker* v. *Jones,* 47 Am. St. Rep., 193; and Frye on Specif. Performance (3d ed.), §§ 88, 98, 103.

The rule is not universal that courts of equity will never enforce a contract requiring building to be done. They have enforced such contracts from the earliest days to the present time. Story's Eq. Jurisp., 725; *Post* v. *West Shore, etc., R.. R. Co.,* 23 N. Y., 581; *Joy* v. *St. Louis,* 136 U. S., 1; *Minneapolis, etc., R. R. Co.* v. *Cox,* 14 Am. St. Rep., 216.

Attention is especially called to the case of *Hooper* v. *Savannah, etc., R. R. Co.,* 69 Ala., 529, wherein it is held that:: "Courts of equity often intervene to compel railroad corporations to the specific performance of contracts they have made with land-owners." This case is authority for the position that the courts of equity have power to award compensation for breach of contract, in certain cases, where jurisdiction has been extended because of other matters of equity involved. An examination of the case shows that, without receiving a deed to the right of way and before constructing crossings or cattleguards, the railroad company, acting under an executory contract, entered into possession of certain premises and constructed its road; and the court was of opinion that the landowner was entitled, at his election, to the specific performance of the contract, or to enforce a lien against the railroad company, not only for the unpaid purchase money due for the right-of-way, but also for the damages resulting from the failure of the company to construct proper crossings and cattle-guards.

Attention is also called to the recently decided case of *Alabama, etc., R. R. Co.* v. *Prouty,* (Ala.) 43 South., 352.

There the Alabama court said: "It is also set up as a distinct complaint against the railroad company that in building a bridge across Black Creek for the track controlled by the said.

railroad company, it was done in such a manner as to reduce the open way for water to flow down said creek, so that when the railroad company cut said ditch, it did it in the manner described in the amended bill, and in a manner to cause a bar in said creek, which caused its waters to back onto complainant's lands, overflow her springs and cause her great damage. The injuries are alleged in a way to show that they are permanent, continuous and constantly recurring. In such a case, they constitute a nuisance against which a court of equity will grant relief, although there may be a remedy at law, since it would obviously be inadequate. A railroad company has no more right to obstruct the natural flow of water by an embankment or artificial means, or by the collection of water into an artificial channel, forcing or conducting it to discharge upon the lands of another, than it has, in the same way, to dispose of water from water courses; and it is liable for resulting damage in the one case as in the other."

The bill we doubt not has equity, and the motion to dismiss for want of equity, was properly overruled. See also *Thornton v. Sheffield, etc., R. R. Co.,* 84 Ala., 109 ; *Taylor v. Taintor,* 16 Wall. (U. S.,) 366 ; and *Ex parte Crouch,* 112 U. S., 178.

WHITFIELD, C. J., delivered the opinion of the court.

The appellee executed to the appellant the following deed: "In consideration of the sum of one dollar to me in hand paid, the receipt of which is hereby acknowledged, and of the benefits that will accrue to me by the reason of the construction of the Yazoo & Mississippi Valley Railroad through my lands, I hereby bargain, sell, convey, and warrant to the Yazoo & Mississippi Valley R. R. Co., its successors and assigns, the following described lands and property, situated in Yazoo county, state of Miss., to-wit: A strip of land in sections 20, 28, 29, 33, and 34, township 13 north, range 2 west, 11,550 feet in length, more or less, and more fully described as follows: 150 feet in width (being 75 feet on each side of the located line of

said railroad as now located through said sections) from Yazoo river to station 180 of said located line; 120 feet in width (being 60 feet on each side of the center or located line aforesaid) from said station 180 to station 190 of said located line; also 100 feet in width (being 50 feet on each side aforesaid located line) from said station 190 to station 287 of said located line at the point of intersection of said located line with the west line of the east $\frac{1}{2}$ of southwest $\frac{1}{4}$ of said section 20, T. 13 N., R. 2 W.—all the above-described land being shown on the located map of said railroad company and containing 28.31 acres, more or less. In consideration for the above deed the said railroad company agrees from year to year to give me ditch sufficient to perfectly drain all land through which they run; also crossings wherever I need them. Witness my signature this 19th day of July, A. D. 1900. [Signed] M. R. Payne." The only material part of this deed for our consideration is the last clause, to-wit: "In consideration for the above deed the said railroad company agrees from year to year to give me ditch sufficient to perfectly drain all land through which they run; also crossings wherever I need them."

This is a bill filed by the appellee against the appellant, based upon this deed, in which appellee, the complainant, sets out, first, that the true consideration for the said deed was, not only ditching and draining and maintenance of farm crossings, but also the erection of a depot on his farm and the removal of a cabin, which the company had refused to move, and the erection and maintenance of cattle guards. He further avers in his bill that his land was well ditched and thoroughly drained when this deed was made, but that the railroad company, in constructing its railroad over his land, threw up a fill and a dump that cut off the passage of the water through the ditches, and that the railroad company had left borrow pits unopened, preventing the flow of the water to its natural channels, thus backing the overflow waters on his plantations and rendering a large number of acres valueless for farm purposes; and he further avers that by reason of this overflow and the standing of stag-

nant water during a greater part of the year on the lands he was disabled from getting tenants to live on that part of his farm, and thus a nuisance was created, endangering the health and happiness of his family and that of his tenants. He further avers that the railroad company had not put in the proper farm crossings, but had cut off and obstructed all of his farm roads leading from one portion of the farm to another, being, in number, four on one farm and three on another; that the railroad company had only constructed one crossing on one farm and two on the other, and that this had caused him to abandon a large part of the farm land on account of its inaccessibility, and had cut him off from his wood supplies. He further avers that the railroad company had wholly failed to erect and maintain proper cattle guards, and that thereby he had been greatly damaged. The prayers of the bill were as follows: First, that the court would construe the deed we have set out; second, that the court would, if necessary, reform the deed so as to properly express the real consideration as set forth in the bill; third, that the court would appoint a competent board of engineers to go upon the lands, survey the same, and ascertain what was necessary for and sufficient to a perfect drainage of the land, ascertain the number of crossings on the two farms necessary for the proper use of the farms, and make report thereof, with the surveys and the estimates; fourth, that the court would generally enter the proper decree requiring the railroad company to specifically perform and carry into execution the provisions of the said deed and the other parts of the contract, meaning, of course, the erection of the depot, etc.; fifth, that the court would also decree that the railroad company be required to construct all the necessary crossings; sixth, that the railroad company be required to dig such ditches as were sufficient to perfectly drain all the land; seventh, that the court require the railroad company to remove the cabin aforesaid according to the alleged oral agreement; eighth, that the court require the railroad company to construct the depot as set out in the bill; ninth, that the cause be referred to the proper tribunal to ascertain and report the

actual damage done to the land by reason of the trampling of stock let in through the failure of the railroad company to properly construct suitable cattle guards, and to that end that an expert agriculturist be appointed to make an examination and report to the court; tenth, that on the coming in of the reports aforesaid and the evidence to be produced, the court make up an issue of fact and impanel a jury to assess damages; eleventh, that on such trial by the jury punitive damages, as well as actual damages, should be assessed, and a decree entered therefor; twelfth, that the court would fix a time within which the railroad company should comply with the provisions of the court's decree, and that the court would decree, further, if it fails to do so within such time, that the railroad company be perpetually enjoined from operating said railroad over the lands of complainant; thirteenth, if complainant be mistaken in the relief prayed for, then that the deed executed by him for the right of way aforesaid be wholly canceled and held for naught; and, fourteenth, he prayed for general relief.

To this bill the railroad company interposed the following demurrers: First. A general demurrer, alleging (1) want of equity; (2) vagueness, uncertainty, and contradictoriness in allegation; (3) no reason for construing the deed; (4) no ground for reformation shown; (5) no ground for specific performance; (6) no ground shown for rescission; (7) failure to show that defendant had created any nuisance; (8) no ground for recovery of compensatory damages; (9) none for the recovery of punitive damages. Second. The railroad company interposed various special demurrers. The first special demurrer proceeded upon the ground that there was no need for construction of the deed, and the second that the bill showed no ground for the specific performance and that the remedy was complete and adequate at law. The third special demurrer proceeded upon the ground that there were no allegations warranting reformation of the deed. The fourth special demurrer proceeded upon the ground that the bill showed no nuisance. The fifth special demurrer was that there were no allegations to support a

rescission.   The sixth special demurrer proceeded upon the ground that exemplary damages were not recoverable in equity. The court below overruled the general demurrer, and overruled all the special demurrers except those three special demurrers to those portions of the bill which prayed for rescission of the contract, which charged the commission of a nuisance, and which prayed for a reformation of the deed.   The railroad company appealed from the decree of the chancellor overruling the general demurrer and overruling the special demurrers named. The appellee appealed from the action of the court below in sustaining the special demurrer as to the commission of a nuisance and its abatement.   No appeal was prosecuted by the appellee from the action of the court below in sustaining the special demurrers to those portions of the bill praying for a rescission of the contract and the reformation of the deed and those two special demurrers and the action of the court upon them are consequently not before us for consideration.

Since the chancery court sustained the special demurrer to those allegations in the bill seeking for a reformation of the deed, and since there is no appeal from the decree on that special demurrer, there is nothing before us to consider with respect to the prayer for a reformation.   The chancery court declined to reform the deed by inserting these other agreements set up by parol.   The idea of the chancery court seems to have been that the appellee was entitled to have a specific performance of the agreement contained in the deed to ditch and drain the land and maintain crossings, but nothing else.   The chief point presented by the bill is whether or not the appellee was entitled to a decree for specific performance.   We do not think he was.   It is not a case for specific performance.   The remedy of the complainant was complete and adequate at law, so far as the erection and maintenance of proper farm crossings and of suitable cattle guards were concerned, and his remedy was also complete and adequate at law with respect to any damages which he might have sustained by the overflowing of his lands and the obstruction of his ditches and drains and the losses he

:sustained in his crops arising therefrom. It is not the province of a court of equity to superintend farming or the ditching of plantations or the erection or. maintenance of cattle guards or farm crossings. These things are in no wise suitable for the ·exercise of equity jurisdiction. There is no occasion to go into ·equity. The remedy at law is all that can be desired.

The brief of the learned counsel for the appellee contains a a number of cases illustrating the exercise of the jurisdiction of ·equity to decree the specific performance of contracts, and, amongst other authorities cited, is 26 Am. & Eng. Encyc. of Law (2d ed.), p. 95, in which an exception is noted in favor of the exercise of this jurisdiction, but in which, also, the ground on which that exception stands is clearly stated as follows: "This ·departure from the general rule is particularly noticeable in ·contracts with reference to the operation of railroads, etc. This exception to the general doctrine has been said to be founded upon the rights of the public, rather than those of the plaintiff; the theory being that, when the inconvenience of the courts in ·acting is more than counterbalanced by the inconvenience of the public if they did not act, the interest of the public will prevail." It must be obvious that the reason for this exception has no application to this. litigation between a private citizen and a railroad company. The reasons are well understood why the ·great common carriers of the country may, by decree of the ·chancery court, be compelled specifically to perform contracts, ·even though sometimes intricate and complicated and requiring long superintendence on the part of the court. Those reasons have no application to this sort of suit. The case of *Hooper* v. *Savannah, etc., R. R .Co.,* 69 Ala., 529, chiefly relied upon by learned counsel for appellee is not in point. There was no deed outright there of the city lots to the railroad company. Brickell, C. J., at page 539, says as follows: "The ·contract did not pass a legal title; on the contrary, the legal title was retained by the appellants as a security for the performance by the company of the stipulations it agreed to perform, as the consideration for the lands. Its title was, at most,

merely equitable," etc. Again, the bill in that case averred
that the railroad company was insolvent. There is nothing of
that sort in this case. But it is to be specially noted that the
case was decided upon the peculiar allegations of that bill and
upon the error of the chancellor in sustaining the motion to dis-
miss for want of equity, and the prayer of the bill in that case
was for a decree for the payment of a penalty of one dollar a
day for the period the company was in default in the perform-
ance of the work according to the contract, and that a lien for
the payment thereof be decreed on the land the railroad had
acquired a right to under the agreement. Very much of the
opinion is taken up in discussing the question whether, under
the circumstances, the owner of the town lots would have a
vendor's lien for the purchase money, and the case was finally
remanded that the bill might be amended, so as to state a case
in accordance with the opinion of the court, which had not been
done in the bill. For these and other obvious differences be-
tween that case and this case, it is apparent that the case cited
is not an authority on the allegations contained in this bill.

The case of *Alabama, etc., R. R. Co.* v. *Prouty* (Ala.), 43
South., 352, is wholly unlike this case on its facts. The water
descending from the mountain, near Lookout Mountain, was
obstructed in its flow, so as to be made to back up over the land
of the plaintiff, overflow her springs, and cause her great dam-
age; and it was averred that the injuries were permanent, con-
tinuous and constantly occurring. The bill was specifically and
alone in that case to abate this continuing nuisance, and inci-
dentally to recover damages. It must be obvious that such is
not the case made by this bill at all. Indeed, there is no prayer
in this bill for the abatement of the alleged nuisance. The alle-
gations with respect to the stagnant water, etc., seem rather to
be thrown in as a makeweight to aggravate the damages result-
ing from the overflow of the land, for the recovery of damages
for which there was a plain and adequate remedy at law. The
bill in this case, whilst it alleges that these stagnant waters were

a nuisance, devotes very little attention to the alleged nuisance, and does not even pray for its abatement. We think the special demurrer was properly sustained to that feature of the bill on that account, because it is obvious that the relief prayed for was not because of any nuisance, but that the allegations with respect to the nuisance were merely thrown in to exaggerate or enhance the damages alleged to have been sustained by the overflow of the lands of the appellee.

We are of the opinion that this case is controlled by the case of *Bomer Bros.* v. *Canaday,* 79 Miss., 222, 30 South., 638, 55 L. R. A. 328, 89 Am. St. Rep., 593. It is not at all the proper thing for the chancery court to decree a specific performance of the common covenants of husbandry, and that is practically what this bill in its main aspects seeks to have done. If the chancery court should enter a decree to specifically enforce this contract as alleged in the bill, embracing not only the agreements named in the deed, but also the parol agreements set up in the bill, the superintendance of the chancery court would be taxed beyond any reasonable limit warranted by any decision with which we are familiar. The learned counsel for appellee is mistaken in saying that the bill does not pray for reformation or rescission. Both are specifically prayed for in certain contingencies.

On the whole case, we think that the appellee's cause of action is one which should have been brought at law, and not one which, taking the bill as a whole, and looking to its real purpose and object, can be maintained in a court of equity. The statute expressly provides for damages for the failure to construct and maintain farm crossings and suitable cattle guards, and, without any deed complainant could have recovered all the damages sustained by the overflowing of his land in an action at law, and these things constitute, in effect, the gravamen of the bill. As stated, the allegations with respect to nuisance are merely makeweights thrown in, and all the other allegations with respect to the depot, the cabin, etc., tend only to increase the dif-

ficulty of specific performance, if it should be decreed, and to further tax the superintendence of the chancery court, if it should assume to deal with the matter; and, as stated, besides, the chancellor declined to reform the deed so as to include these allegations with respect to the depot, the cabin, etc., and there is no cross-appeal on this point.

On the cross-appeal, we affirm the decree of the court below. On the direct appeal, the decree of the court below overruling the general demurrer is reversed, the demurrer sustained, and the cause remanded. As we reverse the decree on the direct appeal, on the general demurrer, we do not deem it necessary to make special comment as to the special demurrers which were overruled. The sustaining of the general demurrer disposes of the case as at present presented.

*Reversed.*