# H. H. Hitt Lumber Co., *et al. v.* Cullman Property Company.

## Bill to Enjoin Trespass and for Recovery of Damages.

(Decided June 11, 1914. Rehearing denied November 7, 1914. 66 South. 720.)

1. *Injunction; Trespass; Irreparable Injury.*—Even though there be no privity of title, equity has jurisdiction to prevent trespasses upon land; however, that jurisdiction is confined to cases in which, from the nature of the property or the repetition of the trespasses, the injury following cannot be compensated for or remedied in an action at law.

2. *Same; Continuing Trespass.*—To be continuing so as to justify the interposition of equity by injunction, a trespass must not depend upon any act to be done by any person, but must result from a continuing state of things, caused by the act of trespass itself.

3. *Same; Inadequacy of Legal Remedy.*—A bill for an injunction to restrain trespass, or continued trespass, must allege facts which show that the legal remedy is inadequate; a mere assertion of the pleader to that effect is not sufficient.

4. *Discovery; Bill; Necessity for.*—A bill for discovery in aid of application for injunction to restrain a trespass which fails to show that complainant is unable to prove the fact sought to be discovered otherwise than by the answer of the respondent, is not sufficient.

5. *Equity; Bill; Multifariousness.*—A bill seeking an injunction to prevent repeated trespasses in the cutting of timber on complainant's land by a corporation, and for damages for the timber already cut, not only by the corporation itself, but also by a partnership which

was converted into the corporation, and by its individual members who were officers of the corporation, is multifarious, and the defect is not cured by section 3095, Code 1907.

APPEAL from Cullman Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by the Cullman Property Company against the H. H. Hitt Lumber Company and others, to enjoin trespass upon land, for discovery in aid thereof, and for damages past and present. From a decree overruling demurrer to the bill, respondents appeal. Reversed, rendered and remanded.

CALLAHAN & HARRIS, for appellant.

BROWN & GRIFFITH, for appellees.

MAYFIELD, J.—The substance of the bill is thus stated by counsel who drafted it:

"The bill, as amended, is prosecuted by the Cullman Property Company, a corporation, and S. Roman, as trustee, for Emanuel Lehman and Ignatius Pollak; said Roman joining in the suit and suing for the use and benefit of the Cullman Property Company, who is alleged to be the beneficial owner of the cause of action on which this bill is predicated. The ultimate purpose of the bill is to restrain the respondent from committing depredations upon the property of the complainant, and to protect its property from being impoverished and denuded to such extent that it is rendered valueless to the complainant, and as incidental relief prays that complainant may be awarded damages for past trespasses and depredations committed by the respondent on the property, from which, as is alleged in the bill, vast amounts of valuable timber have been taken by the respondents, and in aid of this relief discovery is sought."

[H. H. Hitt Lumber Co., et. al. v. Cullman Property Company.]

The main equity upon which the bill is attempted to be grounded is to prevent repeated trespasses upon the land. The trespasses complained of consist of the cutting and removing of timber from the land for commercial purposes. The lands in question consist of many thousands of acres, badly scattered over three or four counties, and no attempt is made to fix the trespasses as upon any particular tract or tracts. This main equity of the bill is attempted to be strengthened by praying a discovery in aid of the suit, to the end of ascertaining the amount of damages which the complainant is entitled to recover. In order to obtain complete equity, the bill seeks to recover damages on account of similar trespasses extending over a period of several years before the filing of the bill. It seeks to recover damages as for trespasses committed long before the main complainant, the Cullman Property Company, ever acquired any interest in the lands, and long before the main defendant, the H. H. Hitt Lumber Company, ever had any existence. The bill contains general, vague, and uncertain allegations that the main complainant acquired, or succeeded to, the rights of the former owners of the land, which would authorize the complainant corporation to recover damages as for trespasses committed before it acquired the land. The bill also contains general, vague, and uncertain allegations that the defendant corporation is liable or responsible for the acts of other respondents, and of a former partnership composed of the same respondents, and which was changed from a partnership into the present corporation, the H. H. Hitt Lumber Company. Another equity attempted to be asserted in the bill is to prevent a multiplicity of suits, both as to trespasses already committed and as

to those that will be committed in the future, which are
sought to be prevented.

The respondents demurred to the bill for want of
equity, for multifariousness, and for misjoinder of par-
ties defendant, and for that the averments of the bill
upon which its equities were based—that is, to pre-
vent repeated trespasses, and multiplicity of suits, and
to compel discovery—were mere conclusions of the
pleader, and that no facts were averred which war-
ranted the conclusions.

Equity jurisdiction to prevent trespasses upon land
has been long recognized. It grew out of the jurisdic-
tion to prevent waste. For a long time privity of title
was essential to the maintenance of a bill to prevent
waste or repeated trespasses upon lands. This strict
rule has later been relaxed, and such a bill may now
be maintained against a mere trespasser, without any
privity of title being shown. As Mr. High says, it is,
however, yet sparingly exercised, and confined to cases
in which, from the peculiar nature of the property, or
from the frequent repetition of the trespass, the con-
sequent injury cannot be compensated for, or remedied,
in an action at law, and where such injury may prop-
erly be termed irreparable. This author says: "The
foundation of the jurisdiction rests in the probability
of irreparable injury, the inadequacy of pecuniary com-
pensation, and the prevention of a multiplicity of suits,
and where facts are not shown to bring the case with-
in these conditions the relief will be refused."—High
on Injunctions, § 697.

The injury resulting from the trespasses, in order
to be a continuing one, justifying relief by injunction,
must be of such a character that its recurrence is not
dependent upon any act to be done by any person, but
results from a continuing state or condition of things

caused by the act or trespass itself. What was said by this court in the case of *Deegan v. Neville,* 127 Ala. 471, 29 South. 173, 85 Am. St. Rep. 137, is appropriate and applicable in this case:

The second reason attempted to be invoked is that the injuries and trespasses are of a recurrent and continuous nature. No facts are alleged supporting this averment. It is a bald assertion of the pleader, and seems to be predicated upon repeated acts of trespass alleged to have been committed by the respondents. To make the injury or trespass a continuing one, it must be of such a character as that its recurrence is not dependent upon any act to be done by any person. Thus, where a person erects a dam by which another's land would be inundated and his timber periodically destroyed, though the act done was a single one, that of erecting the dam, the trespass would not be single. Every rise of the water occasioned by heavy rains would produce another injury, so that from the very nature of the injuries there would be constantly recurring grievances, and the jury would be unable to fix upon a time when the wrong may be said to be complete. Adverting to the allegation of repeated trespasses, it is only necessary to say, adopting the language of Justice Lumpkin, in *Hatcher v. Hampton,* 7 Ga. 49: 'It has never been supposed, that because one person chooses daily to pull down the fence of another, and turn his stock in his fields, that this would authorize the courts of chancery to restrain the intruder by injunction.'—*Ellsworth v. Hale,* 33 Ark. 633. Applying that principle to this cause, we cannot hold that the acts of trespass complained of, though oft-repeated, would authorize the writ of injunction in this case."

A fundamental doctrine, upon which the jurisdiction of equity rests, to prevent trespasses to land by

[H. H. Hitt Lumber Co., et. al. v. Cullman Property Company.]

injunction, is that there is and can be no adequate relief in a court of law. What was said by this court in the case of *Kellar v. Bullington,* 101 Ala. 270, 14 South. 467, is applicable to the averments of the bill in this case:

"There is no averment or proof of facts from which it can be deduced that a virtual destruction of the estate, or injury thereto for which adequate redress cannot be obtained in an action at law, would follow the continued possession and quarrying of stone by the respondents until an action at law could be tried. In the absence of averment and proof to the contrary, it must be assumed the respondents are solvent and able to respond in damages for the alleged trespass. The bill seems to rest for its equity upon the mere conclusions of the pleader that a resort to equity is necessary to prevent irreparable injury and a multiplicity of suits, rather than any statement of facts to that effect."

The rule was well stated by Chancellor Kent in the case of *Jerome v. Ross,* 7 Johns. Ch. (N. Y.) 315, 11 Am. Dec. 484, as follows: "The objection to the injunction, in cases of private trespass, except under very special circumstances, is that it would be productive of public inconvenience, by drawing cases of ordinary trespass within the cognizance of equity, and by calling forth, upon all occasions, its power to punish by attachment, fine, and imprisonment for a further commission of trespass, instead of the more gentle and common-law remedy by action and the assessment of damages by a jury. In ordinary cases, this remedy has been found amply sufficient for the protection of property; and I do not think it advisable, upon any principle of justice or policy, to introduce the chancery remedy as its substitute, except in strong and aggravated instances of trespass, which go to the destruc-

[H. H. Hitt Lumber Co., et. al. v. Cullman Property Company.]

tion of the inheritance, or where the mischief is reme-
diless."

The complainant in that case was left to his rem-
edy at law.

In cases of this character it is not sufficient that the
bill contain mere general averments of irreparable in-
jury, but the facts constituting such mischief should
be set forth. High on Inj. § 722. Mr. High thus states
the rule applicable to suits like this, for cutting trees
and removing timber from lands (section 723) : "Al-
though the modern doctrine of courts of equity in re-
straining trespass is, as we have seen, more liberal than
the ancient, yet a strong case of destruction or irre-
parable mischief must be made out, since courts of
law are, in general, the proper forum for disposing of
actions of trespass. * * * Even the cutting and
removal of timber from pine lands, valuable chiefly
for the timber, is not such a case of irreparable in-
jury as will warrant an injunction, where defendant
claims part of the land by adverse title, and the real
ownership is in doubt. So equity will not enjoin the
cutting of timber from lands which are valuable chief-
ly for mines. Nor will the relief be granted where it
is not shown that the injury is irreparable. And where
a statute gives ample remedy in addition to that at
common law, equity will not restrain the cutting and
removing of timber, where it does not appear that de-
fendants are insolvent. So, too, if the allegations of
the bill are vague and general as to the threatened re-
moval of the timber, and are made upon belief, the
court will not interpose. Nor will mere threats of
defendant to cut wood on complainant's land suffice
to perpetuate an injunction already granted. And it
has been held that the working of turpentine trees and
cutting timber for staves, the land being valuable only

for this purpose, will not warrant the relief, in the absence of any proof of defendant's insolvency, since the remedy at law is ample."

In the case of *Cowles v. Shaw*, 2 Iowa, 496, where the petition alleged that the defendants were continuing to trespass with a view to carrying away the timber, and that they intended, if not restrained, to take and carry away the timber (converted into cordwood) from the premises, and so dispose of it as to put it beyond the reach of petitioners, the court, in holding this not to be sufficient, said: "We do not say that there may not be cases where the legal remedy would be incomplete, and in which an injunction might properly issue. For instance, as above suggested, the defendants might be entirely insolvent, the trespass might grow into a nuisance or waste, numberless suits might have to be brought in order to make the remedy complete, the trespass might be by a party occupying a fiduciary relation, or the injury of such a character that the loss would be irreparable, and not be compensated in dollars and cents, and in any such or similar cases an injunction might be proper."

The same rules were stated in the case of *Wilson v. Meyer*, 144 Ala. 402, 39 South. 317. That case was distinguished from cases like this on the ground that the injury there could not be compensated for in damages, because complainant's business of manfacturing lime was interfered with, and he was prevented from the use of his own property. This case is distinguishable from the case of *Wadsworth v. Goree*, 96 Ala. 227, 10 South. 848. That was a typical case to restrain waste, until the question of title could be determined in an action of law, and, like the case of *Wilson v. Meyer*, to prevent the defendant from interfering with the complainant's business.

The bill is also clearly insufficient, in its averments, as a bill for discovery as either an independent bill for that purpose, or a bill filed in aid of the bill seeking to ascertain the amount of damages. A bill for discovery must allege that the complainant is unable to prove the facts sought to be discovered, otherwise than by the defendant's answer. This is better done by the averment of facts which show it than by a statement of the mere conclusion of the pleader to this effect. The facts here averred do not show the necessity of discovery, but show that the evidence can be obtained without discovery. What was said in the case of *Shackleford v. Bankhead,* 72 Ala. 479, is apt, and conclusive against the averments of this bill as to discovery: "The bill is defective in its allegations as one framed for discovery, in aid of the relief prayed. Where a bill is filed, not for discovery alone, but also for relief, and seeks to withdraw from the jurisdiction of any law court a matter of strictly legal cognizance, it must be shown that the discovery sought is indispensable to the ends of justice—or, in other words, that the facts, as to which the discovery is sought, cannot be otherwise proved than by the defendant's answer.—*Continental Life Ins. Co. v. Webb,* 54 Ala. 689, 697; *Horton v. Mosely,* 17 Ala. 794; 1 Brick. Dig. 714, § 1067."

The bill is also multifarious in seeking to recover damages against several defendants, for several and distinct trespasses committed by each, with which the others are not shown to have had any connection. No one of the respondents is shown to be liable for all the trespasses alleged; some are liable for one, and some for another; but no one is liable for all. Each of the defendants is liable for his own trespasses, but not for those of others. Injunctive relief is sought only

against the Hitt Lumber Company. This corporation is the only respondent alleged to be now trespassing upon the lands. As to all other defendants the bill seeks merely to recover damages for trespasses already committed before the filing of the bill. There is no joint liability alleged as for these trespasses, and no way of equitable apportionment of the liability. No reason whatever is shown to authorize the joinder of all these respondents, as to some of whom the only relief sought is damages as for trespass to lands. There can certainly be no pretense that an action at law is not as complete and adequate as this suit in equity.

It may be convenient for the complainant to combine its several causes of action at law against several defendants in one suit in chancery, but the rules of law and of chancery pleading and practice do not warrant or allow such combinations, against the protest of the defendants improperly joined. The mere fact that some of these respondents are agents or officers of the corporation, and were members of a partnership which was converted into the corporation, does not warrant the joinder of them for the purpose of obtaining decrees against them individually for trespasses committed before the corporation was formed, in a bill the chief equity of which is to enjoin the corporation from further trespassing upon the lands. The officers of a corporation may be made parties defendant with the corporation for certain purposes, such as discovery or swearing to the answer of the corporation, and probably for other purposes, but not for the purpose of obtaining decrees against them individually for torts committed before the corporation was formed. In the case of *McIntosh v. Alexander*, 16 Ala. 87, it is said: "Where a joint claim against several defendants is united in the same bill with a separate claim against

one defendant alone, with which the other defendants have no connection, the bill is multifarious.—Story's Pd. § 284, p. 315; *Boyd v. Hoyt,* 5 Paige (N. Y.) 65."

Multifariousness has been defined by this court as follows: "Multifariousness 'is generally understood to indicate those cases where a party is brought in as a defendant on a record with a large portion of which, and in the case made by which, he has no connection whatever.'—*Adams v. Jones,* 68 Ala. 117, Again: 'It is described generally, as the joinder of different and distinct and independant matters, thereby confounding them, or the uniting in one bill of several matters perfectly distinct and unconnected against one defendant, or the demand of several matters of a distinct and independent nature against several defendants in the same bill.'—*Truss v. Miller,* 116 Ala. 505, 22 South. 863, 866; *Alexander v. Alexander,* 85 Va. 363, 7 S. E. 335, 1 L. R. A. 125; *Mecham v. Williams,* 9 Ala. 847." *A. G. S. R. R. Co. v. Prouty,* 149 Ala. 71, 77, 43 South. 352, 354.

The bill is therefore clearly multifarious; nor is this result changed by our recent statute (section 3095 of the Code). The evils to flow from a construction of the statute which would allow the joining of several causes of action in one bill have been anticipated by Mr. Sims in his valuable work above referred to.—See sections 255, 256. It has been said often that it is impossible to declare any fixed or abstract rule that will determine in all cases as to whether or not a bill is multifarious. The definition of Chief Justice Brickell (quoted by Mr. Sims, § 236), as follows, is probably as good as has been given: 'It is said that multi fariousness as an objection to a bill is not capable of accurate definition. It is described generally as the joinder of distinct and independent matters, thereby

confounding them, or the uniting in one bill of several matters, perfectly distinct and unconnected, against several defendants in the same bill.' "—*Bellvue Co. v. McEvers,* 168 Ala. 53 South. 724.

We will not say that it is not possible to amend this bill so as to give it equity, but we are certain that the bill was subject to the demurrer interposed, on the grounds and for the reasons pointed out. It follows that the chancellor erred in overruling the demurrer, and a decree will be here rendered, sustaining the demurrer; but the cause will be remanded, so as to give the complainant an opportunity to amend, if he so desires.

Reversed, rendered, and remanded.

ANDERSON, C. J., SOMERVILLE and GARDNER, JJ., concur.