# Norton *et al. v.* British American Mortgage Co.

*Bill in Equity to Redeem.*

1. *Right of redemption from under the purchase by mortgagee at his own sale; limitation of suit.*—When a mortgagee, not being authorized by the mortgage, becomes the purchaser at his own sale under a power contained in the mortgage, the mortgagor has the right of election, to be exercised within a reasonable time, either to affirm or disaffirm the sale, and on disaffirmance to redeem; and while, by way of analogy to the time fixed by the statute, within which to exercise the statutory right of redemption, two years is held to be a reasonable time, this rule is not absolute; and the basis of the doctrine being laches, and not staleness of demand, in cases involving peculiar circumstances, which rebut the presumption of laches, the rule is not applicable.

2. *Same; same; facts of this case.*—On a bill filed June 5, 1895, to redeem lands sold March 15, 1893, under a power contained in a mortgage, at which sale the mortgagee became the purchaser, not being

[Norton *et al.* v. British American Mortgage Co.]

authorized thereunto by the mortgage, it was averred and shown that prior to the sale under the mortgage, the complainants who were simple contract creditors of the mortgagor instituted suit against him by attachment, which was levied on the lands embraced in the mortgage ; that by no lack of diligence in the prosecution of the suit of the complainants, but by reason of delays incident to the course of business and practice in the court, judgment in the attachment suit was not rendered in favor of the complainants until March 18, 1895,—three days over two years after the sale under the mortgage. In this judgment the lands were condemned to be sold for the payment of complainants' debt, and at the sale under the execution issued upon said judgment, the complainants became the purchasers. *Held:* That until the rendition of the judgment against the mortgagor, the complainants had not the right to redeem, and that of consequence laches could not be imputed to them ; and that, therefore, their right of redemption in the present bill was not barred by reason of the lapse of two years, and demurrers based upon such grounds are not well taken.

APPEAL from the Chancery Court of Blount.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on the 5th day of June, 1895, by George C. Norton, G. H. Mourning, Alvah L. Terry and Douglas Barclay, as surviving partners of the firm of J. M. Robinson & Co., and avers the following facts : On the 6th day of December, 1892, B. R. Williams, H. W. Williams and R. L. Williams, as partners, under the name of B. R. Williams & Sons, were indebted to said J. M. Robinson & Co., which was composed of complainants and J. M. Robinson, deceased, in the sum of $1,138.80, for goods before that time sold to them. On said date said Robinson & Co. sued out on attachment, from the circuit court of Cullman county, against the said B. R. Williams, H. M. Williams and R. L. Williams as partners, and a branch of this attachment was placed in the hands of the sheriff of Blount county on the 6th of December, 1892, and was by him, on the same day, levied on the property in controversy, as the property of said B. R. Williams, which is situated in said county and then belonged to him. The attachment was duly returned to the circuit court of Cullman county. Upon the levy of said attachment a portion of said land was claimed by B. R. Williams as exempt, which claim was contested by the complainants. By reason of the delays in the transaction of the business of said court, neither of said causes were reached or called

[Norton *et al.* v. British American Mortgage Co.]

for trial until the 18th day of March, 1895, when a judgment was rendered in said contest in favor of the complainants, and the same day a judgment was rendered in favor of the plaintiffs in said attachment suit for the sum of $1,336.38 and costs, and condemning said lands to be sold for the payment of said debt and directing a *venditioni exponas* to issue for that purpose. Said writ was issued, and on the 16th of April, 1895, was placed in the hands of the sheriff of Blount county, who, after giving notice of the time. place and terms of sale as required by law, offered said lands for sale on Monday, May 20th, 1895, and complainants, being the highest bidder purchased the same for the sum of $35.80, which was paid to said sheriff, who executed to complainants a deed to the land, dated and acknowledged on May 25th, 1895, a copy of which is attached to the bill. This is an ordinary sheriff's deed to the land in controversy. No other payment has been made on said judgment.

On the 18th day of April, 1888, the said B. R. Williams gave a mortgage on said lands to the British American Mortgage Company, Limited, for the sum of $3,000 to secure money loaned. A true copy of the mortgage with the endorsements on it is attached to the bill as an exhibit. This is a mortgage executed by said B. R. Williams and Jane Williams, his wife, to said mortgage company and is dated April 18, 1888, to secure the sum of $3,000, which is evidenced by five instalment notes, due, respectively, on the 1st day of November, 1888, 1889, 1890, 1891 and 1892, and provides that if default is made in the payment of any of said notes for fifteen days after it becomes due, the whole sum of money in said mortgage secured might, at the option of the holder of said notes and at said holder's option only and without notice, be declared due and payable, and the party of the second part, his agent, attorney or assignee might proceed to sell said lands at public outcry to the highest bidder, &c., after giving certain notice, &c. There is no authority given in said mortgage to the mortgagee or its assigns to purchase at such sale. The mortgage was duly witnessed and acknowledged so as to convey the homestead, and was filed for record and recorded in the office of the probate judge of Blount county, Alabama, on May 5, 1888. The mortgage

[Norton *et al.* v. British American Mortgage Co.]

debt was partially paid, but default was made in the payment of a portion of it, but to what extent is not averred ; and said land was sold by said company under the power contained in the mortgage on the 15th of March, 1893, for the sum of $2,215.05, and purchased by one Albert L. Richardson, to whom the mortgage company executed its deed. This purchase was made for said company, and Richardson did not pay, and was not expected to pay, anything on account of said purchase, but shortly after conveyed said lands to said company without any consideration. The bill averred that the mortgage company was in fact the purchaser of said lands at said sale, and that the same is voidable at the instance of complainants, who are entitled to redeem the same, and who file this bill for that purpose. The complainants, in the bill alleged that they were ready and willing, and therein offered, to pay any sums which the court might determine to be due on said mortgage debt or necessary to pay and satisfy the same in full. The bill avers that one Thos. B. Williams, a son of said B. R. Williams, claims some interest in said land, but whatever right he might have is subject to the right of complainants to redeem the same. The bill then states the names and residences of the defendants, who are said mortgage company, B. R. Williams and Thos. B. Williams. The bill prays an account of the rents since they came into the possession of the defendant company and the balance due on the mortgage debt, and that the complainants be allowed to redeem upon their payment of the same.

The defendant, the British-American Mortgage Company, demurred to the bill on the following grounds : 1. Complainants as judgment creditors of the mortgagor seek to redeem from defendant as mortgagee after foreclosure, and do not allege that they obtained their judgment before the sale of the land or within two years thereafter. 2. The bill of complaint does not allege that the complainants ever paid or tendered the amount bid for the land at the foreclosure sale and ten per cent. per annum, together with lawful charges, or that they have in any respect complied with the provisions of the statute regulating the redemption of lands in such cases. 3. Complainants do not allege that before suit they tendered to this defendant the amount bid for the land

at the forclosure sale of said land with ten per cent. per annum thereon with lawful charges, or that said amount has been paid into court, or state any valid reason or excuse for not making such tender or paying said amount into court. 4. The bill fails to allege or show a performance of all that the statutes require of the redemptioner in a proceeding to redeem land sold under the power of sale contained in a mortgage when the party seeking to redeem is a judgment creditor of the debtor, nor does it show a valid excuse for such non-performance. Upon the the same grounds said company moved to dismiss the bill for want of equity.

The defendants, B. R. Williams and Thos. B. Williams, filed a demurrer to the bill on the 13th of July, 1895, setting forth the following grounds : "1. It is shown by the bill that the land sought to be redeemed was sold at foreclosure sale under the mortgage on the 15th day of March, 1893, and there is no allegation that any attempt was made by the complainants to redeem within two years thereafter as required by law, and it is shown that the bill for redemption is not filed within said two years. 2. It is not shown in and by said bill that the complainants had any interest in and to said land at the time of the foreclosure as will allow them to come in at this time to redeem."

Upon the submission of the cause upon the demurrers and motion to dismiss the bill for the want of equity, the chancellor sustained both the demurrers and the motion to dismiss the bill, and rendered a decree ordering the bill dismissed. From this decree the complainants appeal, and assign the rendition thereof as error.

WHITE & HOWZE and DICKINSON & DARDEN, for appellants.—1. The lien of attachment accrued at the time of its levy, but did not become perfect until judgment was obtained, when it related back to the time of the original levy.—*Joseph v. Henderson,* 95 Ala. 213 ; *Scarborough v. Malone,* 67 Ala. 572 ; *Cordaman v. Malone,* 63 Ala. 556 ; *Abels v. P & M. Ins. Co.,* 92 Ala. 382 ; *Berney Nat. Bank v. Pinckard,* 87 Ala. 577 ; *Hardaway v. Semmes,* 38 Ala. 657.

2. When the appellants' judgment was obtained in the attachment suit, execution issued and the property sold and bought by them, their title as purchasers related

[Norton *et al.* v. British American Mortgage Co.]

back to the levy of the attachment and carried with it the title of the defendant at that date.—*Grigg v. Banks,* 59 Ala. 316 ; *Downs v. Hopkins,* 65 Ala. 508.

3. It has been expressly decided by this court that the equity of redemption is subject to levy under an attachment.—*Central M. & M. Co. v. Stoven,* 45 Ala. 594; *Grigg v. Banks,* 59 Ala. 317.

4. The complainants were not guilty of laches in failing to file their bill sooner. The facts of this case took it out of the rule applicable to ordinary cases ; and, therefore the doctrine of two years limitation is not applicable.—*Thomas v. Jones,* 84 Ala. 302; *Cooper v. Hornsby,* 71 Ala. 62 ; *Ezell v. Watson,* 83 Ala. 120.

EMERY C. HALL and GEORGE H. PARKER, *contra.*—1. The right of a judgment creditor to redeem is not complete, and can not be enforced in equity, unless there has been an antecedent compliance with all the statutory requirements, or an excuse for non-compliance without fault or neglect on his part.—*Seals v. Pheiffer,* 77 Ala. 278 ; *Paulling v. Meade,* 23 Ala. 505 ; *Spoor v. Phillips,* 27 Ala. 193.

2. In order to be let in to redeem under the statute, the complainants must have obtained their judgment before the sale of the land under the power in the mortgage, or within two years thereafter. In this case the land was sold on the 15th day of March, 1893. Complainants did not obtain their judgment until March 18, 1895, and no tender of the money or offer to redeem was made until the filing of the bill on June 5, 1895. It has been uniformly held that an offer to redeem must come within two years after foreclosure.—*Ezell v. Watson,* 83 Ala. 120 ; *Cooper v. Hornsby,* 71 Ala. 62 ; *Aiken v. Bridgeford,* 84 Ala. 295.

3. The right to disaffirm the sale is personal to the debtor.—*Powers v. Andrews,* 84 Ala. 289 ; *Parmer v. Parmer,* 74 Ala. 285 ; *Otis v. McMillan,* 70 Ala. 46. The right of election to disaffirm the sale must be exercised within a reasonable time, and what constitutes a reasonable time has been settled by this court to be two years. *Ezell v. Watson,* 83 Ala. 120.

BRICKELL, C. J.—The demurrers of the respondents, which were sustained by the chancellor, are not identi-

cal ; and it it probable, were intended to present different questions and different lines of defense.    The demurrers of the British American Mortgage Company seem to rest solely on the theory, that the rights the complainants are seeking to enforce, are the rights conferred by the statute, (Code of 1886, §§ 1879-91), on a judgment creditor to redeem the lands of a judgment debtor, which had been sold in execution of a power of sale contained in a mortage.    While the demurrers of the other respondents seem to rest on theory that it is not shown by the bill, that at the time of the sale under the mortgage, the complainants had an interest in the lands, which entitled them to redeem ; and further, that as more than two years after the sale had elapsed before the filing of the bill, the lapse of time was a bar to any right to redeem, the complainants could assert.

The demurrers of the Mortgage Company would be well taken, if the complainants were asserting the statutory right of redemption.    But it is not the statutory right the bill seeks to enforce.    It is the equity, derived from the common law, of a judgment creditor, who by purchase at a sale under legal process issuing on his judgment, has succeeded to the equity of redemption of the judgment debtor and mortgagor, to be let in to redeem the mortgage.    The equity is essentially different and distinct from the legal right the statute creates, and which can but seldom, if ever, come into existence, until the equity has been barred by a sale under the decree of a court of equity, or under a power in the mortgage.—*Cramer v. Watson*, 73 Ala. 127.

It is true, as a general rule, that a sale of lands in conformity to and in execution of a power contained in the mortgage, is as effectual to cut off and bar the equity of redemption as a decree of foreclosure in a court of equity ; it leaves nothing to the mortgagor but the right to redeem the statute creates and confers.—3 Brick. Dig. 656, § 332.    But this principle is not so applied when a mortgagee, not being authorized by the mortgage, directly or indirectly, becomes the purchaser at his own sale.—*Thomas v. Jones*, 84 Ala. 302.    Such a sale does not divest the equity of redemption of the mortgagor ; it is voidable at his election, or of whosoever may have succeeded to the equity of redemption, if the election be

seasonably expressed.—1 Lead. Eq. Cases (Part 1), 244; *Downs v. Hopkins*, 65 Ala. 508; *Dozier v. Mitchell, Ib.* 511; *Kelley v. Longshore*, 78 Ala. 203.

What is a reasonable time in which the election to avoid the sale must be manifested, it was held in *Ezell v. Watson*, 83 Ala. 120, was two years, by way of analogy to the time fixed by the statute for the exercise of the statutory right of redemption. But it was said by the court: "This limitation of two years is *prima facie* applicable, where no peculiar features mark the case, but may be shown to be unreasonably short, by proof of facts which render its application inequitable and unjust." In *Alexander v. Hill*, 88 Ala. 488, there was an extended discussion of the rule, and it was said the limitation was not statutory, but judicial; that it was "not the result of legislative mandate, but of judicial opinion, that such period is usually a reasonable time for the exercise of the option of affirmance or disaffirmance, with which a purchase by the mortgagee at his own sale arms the mortgagor. The basis of the doctrine is *laches*, and not staleness of demand. The sale cuts off the equity of redemption, as long as it is permitted to stand, but leaves in the mortgagor, and those claiming under him, the right to disaffirm it, and the consequent right to redeem upon such disaffirmance. But the law requires diligence of the mortgagor in the assertion of this right, and in the absence of special circumstances, holds him to have waived the right, and to have affirmed the sale, unless he elects to the contrary within two years. The whole theory of the limitation, therefore, rests on the presumption of ratification after the lapse of two years, in 'ordinary cases.' In extraordinary cases, cases involving peculiar circumstances, which rebut the presumption, it will not be indulged."

The rule prevailing in courts of equity, prior to these decisions, was, that the election to avoid the sale must have been manifested within a reasonable time; there must not have been unreasonable delay, unexplained acquiescence; and whether there was such delay, was dependent upon the facts and circumstances of each particular case. Accepting, that the true theory of the rule announced in the cases to which we have referred "is *laches*, and not staleness of demand," it follows, that when *laches* cannot be imputed, the rule is not applicable,

*Laches* is but negligence ; in cases of this character it is the omission to assert rights, by remedies the law provides.   It cannot be imputed if there be no want of diligence in the pursuit of those remedies ; no want of diligence in resorting to them.

The complainants were simple contract creditors of the mortgagor.   Prior to the sale under the mortgage, they instituted suit against the mortgagor by attachment, which was levied on the lands embraced in the mortgage.   There was no want of diligence in the prosecution of the suit; delays in its termination, by the rendition of final judgment, occurred, but they were the incidents of the course of practice and business in the courts, not attributable to suitors ; so that when judgment was obtained, three days more than two years after the sale under the mortgage had elapsed.   The levy of the attachment created a lien on the equity of redemption, a right to charge it with the payment of the judgment which might be obtained, in priority of any subsequent alienation the mortgagor might make, or of any subsequent incumbrance created by him, or of any subsequent lien in favor of other creditors, arising by operation of law.   But the lien did not of itself transmit to the complainants the equity of redemption, nor confer upon them the right to exercise it.   There is but little of resemblance between the lien created by the levy of an attachment on lands, and the lien of an execution. The one, in its very nature, is less stringent, frailer and more uncertain than the other.   The one is incipient, inchoate and conditional.   It begins with the levy of the attachment, but for its value it is dependent upon the condition that judgment is obtained upon which process may issue, authorizing a sale of the property attached.   When the levy is on lands, the death of the defendant *pendente lite*, works the destruction of the lien created by the levy, for the reason that, if he died intestate, *eo instanti*, the lands descend to his heirs, or if he died testate, they pass to his devisees.   The personal representative succeeds to no estate or interest in them, and a judgment against him will not charge or bind them.   Personal actions do not survive, and are incapable of revivor against heirs or devisees.   As the title resides in them and they can not be made parties, a judgment binding or affecting the lands cannot be ob-

tained; there is no procedure by which they can be divested of their title, though the levy of the attachment created a lien continuing during the life of the ancestor. This is the frailty and uncertainty of the lien as the statutes have created it.—*Phillips v. Ash*, 63 Ala. 414; *Grigg v. Banks*, 59 Ala. 311; *McClellan v. Lipscomb*, 56 Ala. 256.

The lien created by the levy of the attachment, because of its character, because of its frailty and uncertainty, did not confer upon the complainants a present capacity, or a right to redeem the lands from the mortgage. The capacity and right was conditional; dependent upon the rendition of judgment against the mortgagor, upon which process could issue subjecting the lands to sale for its satisfaction. It is only a judgment creditor, who can exercise the common law equity of redeeming lands from a mortgage; to the full enforcement of his rights the mortgage is an impediment or obstacle, he has in equity a right to remove.—2 Jones Mort., § 1069. There are authorities holding that an attaching creditor may be let in to redeem lands from a mortgage. We suppose the statutes on which they are founded, must be variant from our statutes—that the attaching creditor must acquire larger rights than he acquires under our statutes; if this be not true, we are not prepared to follow them. Until the rendition of judgment against the mortgagor, the complainants had not the capacity to avoid the sale under the mortgage; had not the right to redeem the lands. Until the right of redemption accrued, the time in which the right must be exercised did not begin to run. There was of consequence no room for the imputation of *laches* to the complainants, and it results from what we have said, the demurrers to the bill were not well taken, and should not have been overruled.

The decree of the chancellor is reversed, a decree will be entered overruling the demurrers and the motion to dismiss the bill for want of equity, and the cause will be remanded.

Reversed, rendered and remanded.