(76 South. 851)

RUSSELL v. BOHLIN. (1 Div. 978.)

(Supreme Court of Alabama. Nov. 29, 1917.)

1. FRAUDULENT CONVEYANCES  154(1)— FRAUDUENT INTENT—EVIDENCE.

The mere omission of the purchaser to file for record the conveyance from the creditor is not itself evidence of a fraudulent intent.

2. ADVERSE POSSESSION  114(1)—EVIDENCE —SUFFICIENCY.

D. conveyed to plaintiff and C. each an undivided one-half interest in certain land. Later C. conveyed his interest to D. These conveyances were filed for record July 6, 1897. On July 9th following, a judgment was entered against C. and his interest was sold and purchased by the creditor who conveyed an undivided one-half interest to plaintiff. In 1912 defendant, a bona fide purchaser for value, received conveyances from D. to an undivided one-half interest in the land. Code 1886, § 1810, provides that conveyances of unconditional estates to secure any debt created at the date thereof are void as to purchasers for value without notice, unless recorded within 30 days from their date. Plaintiff sued to quiet title to the land contending among other things, that the conveyances from C. to D. were fraudulent as to creditors of C. Held, that the title of defendant was superior to that acquired by plaintiff, there being insufficient evidence to show title in plaintiff by adverse possession.

Appeal from Circuit Court, Mobile County; Thomas H. Smith, Judge.

Bill by Marshall T. Russell against C. W. Bohlin. Decree for defendant, and plaintiff appeals. Affirmed.

Thornton & Frazer and Webb, McAlpine & Grove, all of Mobile, for appellant. Stevens, McCorvey & McLeod, of Mobile, for appellee.

McCLELLAN, J. The original bill was filed on September 1, 1913, by the appellant, Russell, against the appellee, Bohlin, and sought to quiet the title to certain land at Grand Bay, Mobile county, Ala., under the provisions of Code, § 5443 et seq., against the claim of appellee. The appellee answered and also interposed his cross-bill seeking the same character of relief, with reference to an undivided one-half interest in this land, against ·the original complainant.

The land in question originally belonged to the Louisville & Nashville Railroad Company. Prior to April, 1894, C. ·C. Douglass purchased this land from the railroad company, at the suggestion of appellant Russell and one C. C. Campbell. A short time after the conveyance of the land to him by the railroad company, Douglass conveyed an undivided one-half interest each to Russell and Campbell, thus constituting them tenants in common in the land conveyed. By two conveyances purporting to have been executed by C. C. Campbell on December 24, 1896, he conveyed his one-half interest in the land in question to C. C. Douglass, for a ·recited consideration of $125 for each conveyance (aggregating $250). These conveyances were filed for record by Douglass in the probate court ·of Mobile county, Ala., on July 6, 1897. On April 7, 1897, the sheriff of Mobile county levied an attachment "upon all of the right, title, and interest of·C. C. Campbell" in and to the lands here involved, at the suit of Hargadine-McKittrick Dry Goods Company against C. C. Campbell, and made due return to the circuit court of Mobile county, wherein the suit was pending, of his execution ·of this process. On July 9, 1897—three days after the aforesaid conveyances to Douglass were filed for record—judgment in favor of the dry goods company, for about $1,500, was entered against C. C. Campbell. On November 8, 1897, a judgment condemning the lands levied on under the mentioned attachment was rendered by the circuit court of Mobile county, and in execution of the order of the

court directing a sale of the property so condemned a sale was had on February 28, 1898, at which the dry goods company, plaintiff in the judgment, became the purchaser, and, subsequently, on March 14, 1898, the sheriff conveyed all the right, title, and interest of the said C. C. Campbell in the land so sold to the purchaser. On December 28, 1905, the dry goods company conveyed to the appellant, Russell, for a consideration of $625, an undivided one-half interest in the real estate here involved. During the fall of the year 1912 the appellee, Bohlin, for valuable considerations recited and paid, received conveyances from C. C. Douglass of an undivided one-half interest in the lands in question.

The appellant, the original complainant, contends that the two conveyances from Campbell to Douglass, purporting to have been executed in December, 1896, were not, in fact, executed and delivered at or about that time, but, to the contrary, represented the fraudulent effort of both Campbell and Douglass to "save" the property of Campbell from his creditors—a community of purpose to hinder, delay or defraud the creditors of Campbell. A careful review and consideration of the evidence bearing on the appellant's contention that these conveyances did not bear their true date has led to the conclusion that they were, in fact, executed on the date they purport to have been executed and were delivered to Douglass within a few days thereafter, when he paid to Campbell their cash consideration of $250.

"The fraudulent character of the conveyance between the original parties does not per se affect the title of a purchaser or other transferee from the fraudulent grantee, and as a general rule title of such a purchaser or transferee cannot be affected, in favor of creditors of the original grantor, by the prior fraudulent conveyance, unless it be charged and shown that he participated in or had knowledge of the fraud, except where the consideration was so inadequate as to show fraud. But unless he is a bona fide purchaser without notice, he stands in no better position than his vendor." 20 Cyc. p. 645; Thames v. Rembert, 63 Ala. 561, 570, 571; McKee v. West, 141 Ala. 531, 535, 37 South. 740, 109 Am. St. Rep. 54.

Upon consideration of the evidence bearing upon the bona fides of the transaction culminating in the conveyances by Campbell of his interest in the land to Douglass in 1896, we are unable to affirm that a fraudulent purpose to hinder, delay, or defraud a creditor or creditors of Campbell affected the transaction—was entertained by Campbell and Douglass when Douglass bought Campbell's interest in the land in 1896. There are expressions in letters passing from Douglass to Campbell which, if unexplained, cast a shadow of suspicion upon Douglass' good faith in the premises; but, in view of the explanation Douglass has made in his testimony, this court is not persuaded that the transaction between these parties, in 1896, was affected with the fraudulent purpose to hinder, delay, or defraud Campbell's credi-

tors. It is true that Douglass was manifestly careless in paying attention to the assessment of this property for taxes, and negligent in attending to the payment of taxes thereon after he received the conveyances from Campbell; but, however peculiar this conduct may be regarded, it may have consisted with honest intentions and to have been colored with no indifference that was the result of a consciousness on his part that he was but the repository of Campbell's title through the fraudulently conceived purpose to aid Campbell in avoiding the just demands of his creditors. He testified that he relied upon Campbell to care for the taxation of the land, with reference to which he (Douglass) was a tenant in common with Russell. He further testified that Campbell had been dead some years before he became aware of the fact; but, nevertheless, he continued to omit to look after the taxation of his undivided interest in the land in question. In view of the unimpeached character of Douglass and of his evident standing in the community in which he lived, it is hard to conceive, because of the statements of his letters to Campbell and of his omission with respect to the taxation of his interest in the land, that he would have lent himself, in this presumptively single case, to the promotion of the corrupt purpose to aid Campbell in fraudulently concealing his property from the just demands of Campbell's creditors. However, if it were assumed that the conveyances by Campbell to Douglass were fraudulently conceived and executed, to hinder, delay, or defraud the creditors of Campbell, the evidence leaves no room for doubt that Bohlin, the purchaser from such assumed fraudulent grantee, was otherwise than a bona fide purchaser of the property in the fall of 1912, and hence it must be held, as doubtless the chancellor concluded, that any possible fraud that may have affected the transaction, in 1896, between Campbell and Douglass, in which Bohlin had no part and of which he is not shown to have had notice before his purchase in 1912, was ineffectual to deny or prejudice the rights of Bohlin as a bona fide purchaser for value and without notice.

[1] The mere omission of Douglass to promptly file for record the conveyances from Campbell to him is not, itself, evidence of a fraudulent intent. Mathews v. Carroll, 195 Ala. 501, 505, 70 South. 143. As appears, Douglass became the owner of Campbell's interest in the land in December, 1896. At the time of the levy of the attachment in April, 1897, the title to this undivided interest was actually in Douglass, and not in Campbell, the defendant in the writ of attachment.

"In the absence of statutory regulation it is the rule that an unrecorded deed or mortgage is effectual as against a subsequent attachment of the land as the property of the grantor or mortgagor." 2 R. C. L. p. 860.

By Code 1886, § 1810, it was provided:

"Conveyances of unconditional estates and mortgages, or instruments in the nature of a mortgage, of real property, to secure any debt created at the date thereof, are void as to purchasers for a valuable consideration, mortgagees and judgment creditors, having no notice thereof, unless recorded within thirty days from their date."

The conveyances from Campbell to Douglass were filed for record and recorded on July 6, 1897, three days prior to the rendition of the judgment against Campbell in favor of the dry goods company. The statute quoted contemplates that the judgment creditor who is entitled to the benefit of the statute shall be such without notice of the previous conveyance. The dry goods company was accorded constructive notice of the conveyances to Douglass through their registration on July 6, 1897. The dry goods company did not become a judgment creditor until July 9, 1897—three days later—and was hence not a judgment creditor without notice of the existence of the effect wrought by the conveyances from Campbell to Douglass in December, 1896. Daniel v. Sorrells, 9 Ala. 436; Garwood v. Garwood, 9 N. J. Law, 193; Buford v. Shannon, 95 Ala. 205;[1] McGhee v. Bank, 93 Ala. 192, 9 South. 734; Norton v. Mortgage Co., 113 Ala. 110, 119, 20 South. 968.

[2] So, unless the appellant, original complainant, had perfected his title to the whole interest in the land through adverse possession, the conclusion effected by the chancellor that the right and title in Bohlin was superior to that acquired by Russell from the dry goods company was well founded and must be approved. In his opinion the chancellor said upon this question of adverse possession:

"The evidence likewise fails to establish any single element of adverse possession which would establish title in complainant [i. e., appellant] against his cotenant."

A careful reconsideration of the entire legal evidence bearing upon this issue—a great volume of which was taken—has led this court to the conclusion that error cannot be affirmed of the court below in this particular. A discussion of the evidence is impracticable, and since the elements of adverse possession essential to divest the title of one cotenant and invest it in another are so familiar, it is not thought necessary to enumerate them.

No error appearing, the decree must be affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.