(80 South. 617)

KIMBROUGH v. ALRED et al. (8 Div. 127.)

(Supreme Court of Alabama. Nov. 21, 1918. Rehearing Denied Dec. 21, 1918.)

1. EQUITY �köm150(6)—BILL — MULTIFARIOUSNESS.

Bankruptcy trustee's bill to set aside several fraudulent conveyances and transactions by bankrupt *held* not multifarious for having made parties respondent persons charged with participation or knowledge of fraud, though in separate transactions without connection.

2. BANKRUPTCY �köm302(1)—SUIT BY BANKRUPT'S TRUSTEE—SUFFICIENCY OF BILL.

Bankruptcy trustee's bill to set aside fraudulent conveyances, etc., by bankrupt *held* sufficiently to charge actual fraud, on part of bankrupt and his brother-in-law, mortgagee of his municipal lighting plant, in execution of mortgage thereon, and to sufficiently show fraudulent diversion of bankrupt's assets.

3. EXECUTION �köm46—FRAUDULENT CONVEYANCES �köm237(1) — FRAUDULENT DISPOSITION OF MONEY—CREDITORS' SUIT.

Money is leviable property, and may be reached by a creditor's suit when fraudulently disposed of.

4. BANKRUPTCY �köm302(1) — TRANSFER OF PAYMENT FOR PROPERTY CONVEYED—BILL.

Bankruptcy trustee's bill to declare fraudulent and void as against creditors transfer of payment of $6,000 for bankrupt's municipal lighting plant, by power company which bought it, to the bankrupt's brother-in-law, and to charge power company with amount, *held* insufficient as against power company.

5. BANKRUPTCY �köm182—NOTICE OF FRAUDULENT INTENT—FAILURE TO RECORD MORTGAGE.

Fact that mortgage on bankrupt's municipal lighting plant, executed to his brother-in-law, had not been recorded, was not notice of any fraudulent intent as against power company which purchased plant and requested cancellation of mortgage.

6. BANKRUPTCY �köm182—NOTICE OF FRAUDULENT INTENT—RELATION OF PARTIES.

Where bankrupt mortgaged his municipal lighting plant to his brother-in-law, and thereafter sold to power company, which transferred price to brother-in-law, power company's knowledge that parties were related was insufficient to give it notice of any fraudulent intent as to creditors.

7. BANKRUPTCY �köm182 — BONA FIDE PURCHASER.

Mere fact that bankrupt was heavily indebted when he sold to power company his municipal lighting plant, which he had mortgaged to his brother-in-law, did not of itself make transaction fraudulent as to power company, which transferred price to brother-in-law, if based upon good consideration as a bona fide sale.

8. BANKRUPTCY ⊦köm182—MORTGAGE TO RELATIVE—RETENTION OF POSSESSION.

Mere retention of possession of municipal lighting plant by bankrupt after execution of mortgage by him to his brother-in-law *held* not such reservation of benefit to him as invalidated mortgage against creditors.

9. BANKRUPTCY ⊦köm182—NOTICE OF FRAUD—POSSESSION OF MORTGAGE.

Where bankrupt, who had mortgaged his municipal lighting plant to his brother-in-law, remained in possession, and also had possession of mortgage, fact that he had possession of and produced mortgage to power company, which was purchasing plant, was insufficient to charge company with knowledge of any fraud as to his creditors.

10. BANKRUPTCY ⊦köm178(2) — OVERPAYMENTS FOR SERVICES.

Where bankrupt, owner of stave company, when desperately involved, diverted revenues of business for his own benefit and that of others by overpayments for services, exorbitant hire of teams, etc., his bankruptcy trustee for benefit of creditors could reach such money and property in hands of such others.

11. BANKRUPTCY ⊦köm302(1) — PLEADING — CONSIDERATION—ACTUAL FRAUD.

Bankruptcy trustee's bill against mortgagees of bankrupt to cancel mortgages as fraudulent to creditors *held* insufficient as showing mortgages were based on valuable consideration and had no actual fraud in their execution.

12. BANKRUPTCY ⊦köm299 — ACTION TO SET ASIDE—BANKRUPT AS PARTY.

A bankrupt was properly made a party to suit by his trustee against various mortgagees, etc., to cancel instruments as fraudulent to creditors, and to recover amounts of money as paid in fraud thereof.

13. BANKRUPTCY ⊦köm279 — SUIT BY BANKRUPTCY TRUSTEE.

Suit to cancel mortgages as fraudulent to creditors and to recover property and money fraudulently transferred is properly brought by the bankruptcy trustee of the fraudulent debtor's estate.

Appeal from Circuit Court, Morgan County; Robert C. Brickell, Judge.

Suit by P. G. Kimbrough, trustee, for J. R. White, bankrupt, against L. T. Alred and others. From the decree, plaintiff appeals. Affirmed in part; reversed and remanded in part.

The substance of the bill, which is filed by Kimbrough as trustee in bankruptcy for J. R. White, is that in 1915 White was considerably involved, most of which was unsecured or inadequately secured, and that he owned a certain municipal lighting plant in Hartselle, consisting of machinery and appliances and certain valuable franchises, and that he executed to his brother-in-law, one L. T. Alred, a mortgage on this property for the sum of $6,000. Alred is described as a small farmer, living some distance from any town or village, and in the wilds of Cullman county. The detail of the mortgage is not

stated, as it is stated that it has been withheld from record and carried around by White; that after the execution of the mortgage White remained in possession of the properties, receiving the incomes, which were lucrative; and that it was understood when the mortgage was executed that White should retain it and the property, and he did so, and carried the mortgage around with him, putting it up with banks for the purpose of getting money on it, and it was withheld from record for these purposes.

The consideration for the mortgage is denied, and it is alleged: That Alred never had that amount of money to lend, and could not have raised it at any time during his career without the aid of said White, and that said mortgage was made a secret trust for the greatly embarrassed White to shield his property and revenue from clamorous creditors, several of whom were suing him at the time. That in August, 1915, White sold out said plant and equipment to the Alabama Power Company for the sum of $8,000, prior to the payment of which sum White made an affidavit as to incumbrances, disclosing in said statement said mortgage. The Alabama Power Company in paying for said plant made out a check for $6,000 to his order, which he paid to said Alred really in trust for himself, and to screen the same from his creditors. The Alabama Power Company is charged with notice of the fraudulent designs of White and Alred, the unrecorded mortgage, and all the facts above set out as to the actions of White and Alred. That in making said check payable to White and requiring that he pay same to Alred the Alabama Power Company participated with knowledge of the fraudulent design and purpose of White and Alred.

It is further alleged that A. B. Turney is a small merchant, having in stock at no time more than $1,000 of goods, also a bankrupt, and being involved in several sets of bankruptcy cases, and that White executed to him a mortgage for $2,000, which was devoid, or almost entirely devoid, of consideration, and conveyed thereby certain real estate, which is set forth. White, being greatly indebted to the First National Bank of Hartselle and being embarrassed, procured Doss and Day to indorse for him, and executed to Doss a mortgage on certain real estate for the purpose of securing an indebtedness of $3,089.42, due January 1, 1917.

It is alleged that the consideration for this mortgage was largely simulated, and that really only a small amount was due, while the other was for advances which were never really made; that for reasons best known to themselves said White and Doss concocted and antedated, as of July, 1915, a certain previous equitable mortgage which was without consideration, and which was given for the same indebtedness as the last above set out mortgage; that in February, 1916, White made a fraudulent arrangement with the Hoods, father and son, by which they took over the Hartselle Heading and Stave Mill, White as general manager, and Archie Hood, a minor, the sole owner, and doing those things that required personal responsibility, and together they obtained large profits, which were divided, and doctored the accounts, and covered up the transactions in such a way that it appeared that the enterprise was run at a loss, when in fact it was profitable; that by such methods and by one S. E. Stewart, a ground floor mortgagee of the series, coming into the arrangement further, other profits were suppressed, said Stewart availing himself of a watchman, who stalked the works at intervals as an excuse for the claim of Stewart that he was in possession of the property. About this time White concluded it was best to be adjudged a voluntary bankrupt, and it was arranged in order that White and the Hoods might find shelter under the ample folds of the Stewart mortgage from the bankruptcy sequelæ, to acknowledge Stewart's possession and to attorn to him, and Stewart agreed to pose as possessor and protector for an agreed stipend to be paid at the rate of $75 per month for the time that the mill should operate.

Other matters are alleged not necessary to be here set out. The prayer is to cancel the alleged mortgages from White to Alred, to Doss and to Turney as fraudulent and simulated, and to require Alred to account for the money paid him by the Alabama Power Company for White; to hold the Alabama Power Company jointly and severally liable for the said sum of $6,000, and to render a decree against each of them personally, and to enjoin said Turney and Doss from receiving any of the proceeds of the pretended foreclosure of their pretended mortgages; to set aside and annul the arrangement between White and the Hoods, for an accounting and general relief.

The bill was amended by setting forth additional derelictions of the Hoods and White in the management of the Heading and Stave Mill.

E. W. Godbey, of Decatur, for appellant. Sample & Kilpatrick, of Cullman, Eyster & Eyster, of Albany, and Thomas W. Martin, of Birmingham, for appellees.

GARDNER, J. The bill in this case is filed by plaintiff as trustee in bankruptcy of the estate of J. R. White, and seeks to set aside, as in fraud of creditors, certain conveyances and declare certain transactions void, and to hold the parties accountable therefor. The substance of the bill's averments will not be here stated in this opinion, but will be sufficiently set out by the reporter in his report of the case. We will only state

so much thereof as suffices for a general understanding of the questions here determined.

[1] It is earnestly insisted in the first place by all the respondents that the bill is multifarious, in that it seeks to have the transfer of the payment of $6,000 by the Alabama Power Company to Alred declared fraudulent and void as against creditors; and likewise to have declared fraudulent and void the business arrangement made by the bankrupt with the respondents Milton and Archie Hood in the business known as the Hartselle Stave & Heading Company, and also seeks to have set aside the mortgages to the respondents Doss and Turney as fraudulent and void as against creditors. It is further insisted there is no connection as to any of these transactions, one with the other, and that therefore the bill is multifarious citing, among other authorities, Truss v. Miller, 116 Ala. 505, 22 South. 863; Hitt Lbr. Co. v. Cullman Property Co., 189 Ala. 22, 66 South. 720; A. G. S. R. R. Co. v. Prouty, 149 Ala. 71, 43 South. 352; Ford v. Borders, 200 Ala. 70, 75 South. 400; Bentley v. Barnes, 155 Ala. 659, 47 South. 159.

We are of the opinion, however, that the bill sufficiently shows a scheme on the part of the bankrupt to defraud his creditors, and that resort was had to the various transactions, as set up in the bill, for the consummation of this one purpose; and that the bill is not multifarious for having made respondents those parties charged with participation or knowledge of the fraud, although in separate transactions which had no connection one with the other. We think the bill in this respect comes within the influence of the following authorities, and that the demurrer taking this point should not be sustained: Henderson v. Farley Nat. Bk., 123 Ala. 547, 26 South. 226, 82 Am. St. Rep. 140; N. W. Land Ass'n v. Grady, 137 Ala. 219, 33 South. 874; Hill Bros. v. Moone, 104 Ala. 353, 16 South. 67; Ellis v. Vandergrift, 173 Ala. 142, 55 South. 781; Mitchell v. Cudd, 196 Ala. 162, 71 South. 660.

[2] The bill seeks to have the respondent Alabama Power Company account for $6,000, which it paid to said J. R. White, bankrupt, on August 4, 1915, as part of the purchase price of the municipal electric lighting plant, in the town of Hartselle, Ala., owned by the bankrupt. It is charged in the bill that said White had previously executed a mortgage on said lighting plant in the sum of $6,000 to respondent Alred, his brother-in-law, who resided in Cullman county, and which mortgage was withheld from record, and which the said White was permitted to have in his possession and borrow money thereon; that, in fact, it represented but a pretended loan, without consideration, and was made for the purpose of shielding White's property and revenue from his creditors.

We are of the opinion that the bill sufficiently charges actual fraud as to White, and his brother-in-law Alred, in the execution of this mortgage; that it sufficiently shows a fraudulent diversion of the assets of the bankrupt from his creditors, and was sufficient as against the demurrers interposed thereto by the respondent Alred. We are therefore of the opinion that the court committed error in sustaining the demurrers of the respondent Alred.

[3, 4] As to the respondent Alabama Power Company, however, we think the court properly sustained its demurrer to the bill as amended. It is shown that the lighting plant was sold for $8,000, and, in the absence of averments to the contrary, it must be assumed this was a fair value for the same; that during the negotiation White made affidavit as to incumbrances against the plant, which disclosed the mortgage to Alred, and it is charged that the power company in paying for the plant made out a check for $6,000 payable to White, stipulating that he should pay the same on said mortgage indebtedness to Alred. It is not charged that the power company had any knowledge or notice whatever of any fraudulent conduct on the part of White and Alred in the execution of said mortgage, or that it participated in any manner with said Alred or White in the perpetration of any fraudulent diversion of said funds from the creditors of said White. On the other hand, as we construe the bill, it appears that the said company paid fair value for said plant, and through business caution requested the cancellation of the mortgage thereon. It is, of course, well understood that money is leviable property, and may be reached by a creditor's suit when fraudulently disposed of. Exchange Nat. Bank v. Stewart, 158 Ala. 218, 48 South. 487.

Charging said power company with knowledge of the fraud, however, the complainant seems to rely upon the averments that the mortgage had not been recorded; that White had been left in the possession and enjoyment of the plant and its revenues; that White was related to Alred, and had been left in possession of the mortgage, and had negotiated a loan thereon, and had notice that said White was heavily indebted, and the plant otherwise mortgaged to the General or Western Electric Company.

[5-7] The fact that the mortgage had not been recorded was no notice of any fraudulent intent as against the power company. Russell v. Bohlin, 76 South. 851.[1] Nor was knowledge of the fact that the parties were related sufficient to give notice of any fraudulent intent. Marshall v. Croon, 60 Ala. 121; Dickson v. McLarney, 97 Ala. 383, 12 South. 398. The mere fact that White was heavily indebted did not of itself make the transaction fraudulent if based upon a good consid-

[1] 200 Ala. 525.

eration as a bona fide sale. Skinner v. So. Gro. Co., 174 Ala. 371, 56 South. 916; So. Oil Co. v. Harris, 175 Ala. 323, 57 South. 854.

[8, 9] Much stress is made in argument of counsel for appellant upon the averment that the power company had notice that White had continued in possession and control of the lighting plant after the execution of the mortgage, citing Gray-Dudley Hdw. Co. v. Guthrie, 75 South. 320;[2] Roden v. Norton, 128 Ala. 129, 29 South. 637; Christian-Craft Co. v. Michael, 121 Ala. 84, 25 South. 571, 77 Am. St. Rep. 30, among others.

These cases, however, dealt with transactions wherein the mortgagor was permitted to remain in possession of the mortgaged property, such as stock of goods or lumber, with the right to dispose of the same, as had been the previous custom, on his own behalf, and thereby reserving a benefit to the mortgagor, which rendered the mortgage fraudulent. These cases are, in our opinion, not in point in the instant case. The mortgagor here was not left in possession of the property with the authority to dispose of the plant in the ordinary course of trade, as in the case of a stock of goods, and the very nature of the property distinguishes it in every way from a stock of merchandise. The mere retention therefore by the mortgagor, in such a case, was not such a reservation of a benefit to him as invalidates the instrument against creditors. Rike v. Ryan, 147 Ala. 497, 41 South. 959. Nor do we think the fact that the mortgage was produced and in possession of the mortgagor sufficient to charge a knowledge of any fraud. As has been often said by this court:

"Fraud is never presumed, * * * and will not be imputed when the facts and circumstances from which it is supposed to arise may reasonably consist with honest intentions." Mathews v. Carroll Merc. Co., 195 Ala. 501, 70 South. 143.

We are of the opinion the averments of the bill as against the Alabama Power Company were insufficient as charging any participation or knowledge of fraud on its part in the transaction of the purchase and payment for the lighting plant, and that the demurrer taking the point was properly sustained.

[10] As we construe the bill as against the respondents Milton and Archie Hood, it charges said White and these respondents with a fraudulent arrangement whereby the latter were to take over, or assume and pretend to take over, the proprietorship of the Hartselle Stage & Heading Company, owned by the said White, and which had at that time valuable and profitable contracts for its output, that the said White was at that time insolvent, being sued and in desperate financial extremities, and that this scheme was arranged so that the profits and revenues from said stave business might be diverted

from the creditors to the benefit of the said Hoods and White, and such was, in fact, the result, some of the revenues being diverted to the Hoods for services, for $100 per month, which sum was wholly out of proportion to the worth of the services rendered; the exorbitant hire of terms; the checking out of money by the said White for himself, as well as his withdrawal of goods from the commissary; and it is charged that the fruits and profits of said arrangement should be held as a part of the assets of said estate, and the respondents Hood should be made to account therefor.

Fraudulent design of all the parties is charged, and a diversion of the profits of a valuable contract is also shown, all in fraud of the creditors of said J. R. White.

"A debtor will not be permitted to donate the use of property belonging to him to another in fraud of his creditors; and, if he does so, the earnings of such property may be reached and subjected by his creditors." 20 Cyc. 361.

See, also, 20 Cyc. 406.

We are of the opinion the bill as amended is sufficient as against the demurrers interposed by said Hoods, and there was error in sustaining the same.

[11] The averments of the bill as to the respondent Turney are in the alternative, and, as construed most strongly against the pleader, fail to show that the mortgage to said Turney was without consideration, but is to be construed as showing the same was based upon a valuable consideration, although not to the full extent as expressed in the face thereof. This also applies with equal force to the allegations of the bill as against respondent Doss.

These mortgages, therefore, as we construe the bill, were based upon a valuable consideration, and no actual fraud in their execution is shown. London v. Anderson Brass Works, 197 Ala. 16, 72 South. 359.

The argument of counsel for appellant seems to be based upon the assumption that the bill shows these mortgages were without consideration, and therefore void as to the existing creditors; but we do not so understand the bill, and we are therefore of the opinion that the demurrers of these respondents, taking this point, were properly sustained.

[12] We are of the opinion that the respondent J. R. White was properly made a party respondent, and that his demurrer should have been overruled.

The purchase of the automobile is alleged to have been made with funds which were a part of the assets of the estate, and thus by him wrongfully diverted from his creditors; and it is here sought to follow such funds into the property thus purchased.

[13] The suit is properly brought by the complainant as trustee of the bankrupt estate. Andrews v. Mather, 134 Ala. 358, 32

[2] 200 Ala. 6.

South. 738; Exchange Nat. Bank v. Stewart, supra; Collier on Bankruptcy (1910), p. 767.

Our conclusion, therefore, is that, as to respondents Milton and Archie Hood, Alred and J. R. White, the decree is erroneous, and in that respect will be reversed as to said respondents, and they will be here taxed with costs of this appeal. But as to the respondents Alabama Power Company, Turney, and Doss, we are of the opinion the demurrers were properly sustained, and the decree in that respect will be affirmed.

Affirmed in part, and in part reversed and remanded.

McCLELLAN, SAYRE, and SOMERVILLE, JJ., concur.